IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAROLINE F. KEEBLE, a/k/a Anisa :
Abd el Fattah,
: Case No. 2:04-cv-1150
        Plaintiff,
: Judge Sargus
v.
: Magistrate Judge Abel
THE WASHINGTON POST
COMPANY, *et al.*, :

        Defendants.

## **ORDER**

This matter is before the Court on Defendant Gregory White's May 31, 2005 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (5), and (6) (doc. 28) and Plaintiff Caroline F. Keeble's August 11, 2005 motion for extension of time to complete discovery (doc. 35). Plaintiff Caroline Keeble filed this action against various Defendants after The Washington Post and The Cleveland Plain Dealer published articles that linked an organization that she was affiliated with to terrorism. She maintains that Defendants, through the publication of these articles, conspired to deprive her of her First Amendment rights. On April 7, 2005, all Defendants, with the exception of Gregory White, were dismissed from this lawsuit (doc. 24). White is the United States Attorney for the Northern District of Ohio. He argues that he should be dismissed from this lawsuit because the conduct Keeble complains about was protected by quasi-judicial immunity, suit against a federal actor cannot be brought pursuant to 42 U.S.C. § 1983, Keeble does not have standing to bring suit on behalf of her organization, this Court lacks personal jurisdiction because Keeble failed to

1

effectuate service, and this action is brought in an improper venue.

I. Facts.

This action was filed on December 3, 2004 against Defendants The Washington Post Company, The Washington Post Newspaper, Timothy Dwyer and Jerry Markon two reporters for the Post, The Cleveland Plain Dealer, Amanda Garret a reporter for the Plain Dealer, Steven Emerson an investigative reporter and consultant for MSNBC News, and U.S. Attorney Gregory White. All of the defendants except for Gregory White, previously filed motions to dismiss, which were granted.

Keeble argues that White violated her constitutional rights by making false accusations to the media, which were published in two newspaper articles. The false allegations linked an organization that Keeble did work for, the United Association of Studies in Research, Inc. ("UASR"), to terrorism. Keeble worked for UASR as an independent contractor doing media relations, and at some time, she served as the UASR president for six months.

The first article was published by The Plain Dealer on March 26, 2004 and is entitled,"Damra seeks judges OK to leave town." The article states that Darma, a criminal defendant, asked the United States District Court for the Northern District of Ohio for permission to attend a UASR meeting in Virginia. The article contains the following references to the federal prosecutors office:

> The Cleveland imam charged with hiding his ties to terror hopes to visit a Virginia group that prosecutors say is a front for Hamas.
>
> * * *
>
> Prosecutors strongly oppose Damra's request, saying that the group is affiliated with a who's of who of terror funding.

2

\* \* \*

> Moreover, prosecutors contend the timing of the trip is particularly precarious since it comes days after Israel's assassination of Sheik Ahmed Yassin, the founder of Hamas.

(Doc. 17, Ex. 3). White is not mentioned by name in this article.

The Second article entitled "Iman Not Allowed to Attend Va. Meeting" appeared in The Washington Post on March 27, 2005. It contains the following statements:

> The group [UASR] says it is a Muslim American think tank, but federal prosecutors and congressional investigators have linked it to terrorist groups, primarily the Islamic Resistance Movement, or Hamas, court records and interviews show.

\* \* \*

> In documents filed this week in U.S. District Court in Cleveland, Damra's attorneys described the meeting as "a panel discussion between Rabbis and Inams at an Interfaith meeting."

\* \* \*

> Prosecutors allege that Damra did not disclose his ties to Islamic Jihad, which has claimed responsibility for bombings and other terrorist acts in Israel.

\* \* \*

> In response to Damra's travel request, Gregory A. White, the U.S. attorney in Cleveland, filed a memo saying he "strongly opposes" granting it because UASR "has demonstrated its sympathies for Hamas." He added that several "key associates" of the Springfield group "are, or have been, integrally involved in Hamas activities."

(Def.'s Mot. to Dismiss, Ex. B).

Keeble claims that White and the former Defendants engaged in conspiracies to deprive her of her constitutionally protected rights and to manufacture "secret evidence" to be used in deportation hearings. Her allegations are made against all of the

defendants, but in her response motion, she states that only three or four of the counts in her complaint apply to White, and she does not specify which counts apply to him. (Resp., p. 3).

There are five counts in her complaint: (1) Defendants violated 18 U.S.C. § 241 by engaging in a conspiracy to intimidate her so she would not exercise her rights to free speech and political association; (2) Defendants violated her civil rights protected by 42 U.S.C. § 1983 by alleging that her political associations and speech are criminal; (3) Defendants deprived Keeble of due process, protected by the Fifth Amendment, when they published the articles; (4) she was denied the equal protection of the laws when Defendants published the articles that implied that she was a terrorist or affiliated with terrorists; and (5) Defendants violated her First Amendment rights by refusing to publish an editorial she authored.

## II. Motion to Dismiss Pursuant to 12(b)(6).

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n.3 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975); *Smart*, 580

F.2d at 218 n.3; *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Rule 12(b)(6), a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Neil v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981); *Parker v. Turner*, 626 F.2d 1, 7 (6th Cir. 1980). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. See *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d at 858; *Dunn*, 697 F.2d at 125. Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See *Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

The court will grant a defendant's motion for dismissal under Rule 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See generally *Rauch v. Day & Night Mfg Corp.*, 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

It is not necessary that a plaintiff set forth in a complaint the legal theory on which plaintiff relies if the complaint sets forth sufficient factual allegations to state a claim showing that plaintiff is entitled to any relief which can be granted. See *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978); *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24-25 (4th Cir. 1963).

6

## III. Discussion.

### A. Absolute Quasi-Judicial Immunity.

The case of *Imbler v. Pachtman*, 424 U.S. 409 (1976), discussed a state prosecutor's immunity in the context of a suit brought pursuant to Section 1983. The Court held that in order to preserve the judicial process, it is necessary to protect prosecutors with absolute immunity and not just qualified immunity when performing their duties as an advocate. *Id.* at 427. If a prosecutor were subject to liability for performing his or her functions, it "would disserve the broader public interest." *Id.*

> It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

*Id.* at 427-28. Absolute immunity applies when the prosecutor's "activities were intimately associated with the judicial phase of the criminal process." *Id.* at 430. Accordingly, it only protects the prosecutor for acts that are deemed to be a part of "initiating a prosecution and in presenting the State's case . . . . " *Id.* at 430-31. And in their role as advocates, prosecutors are "immune from suits for malicious prosecution and for defamation . . . ." *Burns v. Reed*, 500 U.S. 478, 485 (1991).

To determine if an act is "intimately associated" with the judicial process a "functional approach" is used. *Buckley, Fitzsimmons*, 509 U.S. 259, 269 (1993). The test looks at the "nature of the function performed . . . " by the prosecutor to decide whether absolute immunity applies. *Id.* Acts such as appearing before a judge and acting as an advocate at a search warrant hearing qualify for the heightened protection.

7

*Burns,* 500 U.S. at 491. The Court, in formulating this test, considered the risk of retaliatory, vexatious litigation. *Id.* Further, a prosecutor participating in pretrial proceedings needs greater protection in order to maintain a sense of independence. *Id.*

While these cases discuss state prosecutors, U.S. attorneys are subject to the same protection for carrying out actions in their role as advocates of the United States. *Champegnie v. Discenza,* 863 F.2d 549 (table); 1987 WL 30590 (6th Cir. Dec. 31, 1987). It is the burden of the prosecutor to show that absolute immunity protects the action in question. *Buckley,* 509 U.S. at 269.

Relevant to Keeble's claims is a portion of the Court's discussion in *Buckley.* In *Buckley,* the state prosecutor sought absolute immunity for statements made to the press. *Id.* at 276. The Court held that these statements were not protected by absolute immunity, rather, like "most statements made outside of court [they receive] only good-faith immunity." *Id.* at 276. "Comments made to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Id.*

In this case, although Keeble argues that White made statements to the media concerning her or UASR's ties to a terrorist organization, there is no allegation in the complaint and no proffer of evidence that White ever spoke with the media. Even if the Court were to assume that White was interviewed by reporters, the articles merely repeat statements White's office made in briefs filed with the United States District Court for the Northern District of Ohio. Repeating statements made in a brief to a reporter does not destroy prosecutorial immunity. The articles state that "In documents filed this week in U.S. District Court . . ." and White "filed a memo . . ." opposing

8

Damra's request. (Def. Mot. to Dismiss, Ex. B). The statements found in the articles come from court pleadings. The documents were filed with the court in opposition to Damra's request to leave the jurisdiction. The statements contained in the filings were made by the prosecutor in his role as an advocate. They are intimately associated with the judicial process and are protected by absolute immunity.

### B. 42 U.S.C. § 1983.

White argues that a civil rights action cannot be maintained against him pursuant to 42 U.S.C. § 1983 because this provision only applies to complaints filed against state actors. Section 1983 subjects actors to liability for the deprivation of constitutional rights occurring under color of state law; therefore, ordinarily, federal employees are not subject to suit under this provision. *See Strickland on Behalf of Strickland v. Shalala*, 123 F.3d 863 (6th Cir. 1997). Consequently, the complaint does not state a claim against Defendant White under 42 U.S.C. § 1983.

### C. Keeble's Standing to Bring Suit on Behalf of UASR.

White argues that Keeble lacks standing to bring suit on behalf of UASR; and accordingly, her claims should be dismissed. However, Keeble's complaint does not seek redress on behalf of UASR. In her response motion, Keeble also states that she is not bringing any claims on behalf of her organization. Defendants argument is moot.

### D. Service of Process.

White argues that this Court does not have personal jurisdiction because Keeble has failed to perfect service. Rule 4 of the Federal Rules of Civil Procedure govern service. It states in pertinent part:

9

**(B)** Service on an officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States--whether or not the officer or employee is sued also in an official capacity--is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by serving the officer or employee in the manner prescribed by Rule 4 (e), (f), or (g).

Fed. R. Civ. P. 4. Provision 4(i)(1) states

**(i) Serving the United States, Its Agencies, Corporations, Officers, or Employees.**

**(1)** Service upon the United States shall be effected

**(A)** by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and

**(B)** by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and

**(C)** in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to the officer or agency.

Fed. R. Civ. P. 4(i)(1). Provision 4(e), which governs service on the individual subject to the suit permits service in accordance with the law "of the state in which the district is located" or by delivering a copy of the summons and complaint to the individual personally or by leaving them at the individual's home with a person who also lives there and is of "suitable age and discretion," or by delivering them to a legally authorized agent.

10

Here the docket sheet shows that the summons was issued to Gregory White on March 17, 2005 (doc. 21). The summons is addressed to:

> U.S. Attorney Gregory A. White
> U.S. Attorney's Office
> 801 Superior, Suite 400
> Cleveland, OH 44113

The docket also reflects that copies of the complaint and summons were sent via certified mail to Gregory White at the same address (doc. 22).

In a letter dated March 2, 2005, from Special Assistant U.S. Attorney Marcia W. Johnson, she states that mailing a copy of the complaint and summons via certified mail to White's place of employment "in care of the Department of Justice does not comply" with the authorized methods of service under the Ohio or Federal Rules of Civil Procedure. The letter also states that because Keeble is claiming that White violated her rights while he was engaged in official conduct of the United States, the United States and the Attorney General must also be served pursuant to Fed. R. Civ. P. 4(i)(A) and (B). The letter provides the address for both the U.S. Attorney General and the U.S. Attorney for the Southern District of Ohio. It further states that Marcia W. Johnson is the authorized agent of White and that personal service upon White may be perfected by serving her with a copy of the complaint and summons. (Def.'s Mot. to Dismiss, Ex. D). The docket sheet does not reflect that Keeble took any of these steps to effectuate service.

Keeble argues that she made three attempts to perfect service upon White and that she contacted the court and that someone there assured her that White had been

11

properly served. The burden of showing that good service has been made is on the plaintiff. *Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). Absent a showing of good cause, if the plaintiff fails to perfect service within 120 days of filing the complaint, the suit must be dismissed. Fed. R. Civ. P. 4(m).

Keeble has failed to show that she has perfected service on White or the United States. While White was an employee of the U.S. Attorney's Office, neither the Ohio Rules or the Federal Rules authorize personal service on an individual by leaving a copy of the complaint and summons at the individual's place of employment. Moreover, since this suit is against White for acts taken in his role as a United States Attorney, the Federal Rules require service upon the United States and the Attorney General. There is no evidence that Keeble ever took these steps and she does not argue that she ever tried to serve the United States or Attorney General. While Keeble argues that she believed she had perfected service, the letter sent to Keeble by Marcia Johnson explained to Keeble in simple, easy to understand language precisely what Keeble needed to do to perfect service. Keeble does not say why she disregarded the letter. This action was filed on December 3, 2004; Keeble has failed to perfect service within 120 days of filing the action, and her claims against White should be dismissed.

### E. Venue.

Defendants argue that this action is improperly venued in the Southern District of Ohio and therefore should be dimissed. While in-depth analysis of this provision is not necessary at this stage because I have already determined that Keeble's claims should be dismissed, I will briefly comment on Keeble's choice to file this action here. The

general venue provision is 28 U.S.C. § 1391(b). It states the following:

> **(b)** A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Provision (b)(1) is inapplicable because at the time of filing, all of the defendants did not reside in the same judicial district. Provision (b)(2) allows the action to be brought in the judicial district where a substantial part of the events occurred. The filings made by White, which are the subject of Keeble's surviving claims, were filed in the Northern District of Ohio. The articles authored and published by the other former Defendants also did not occur here. These events occurred in Cleveland and Washington D.C. Keeble argues that a suit against an officer or employee of the United States may be filed in the district in which the plaintiff lives. However, the proper time for determining an appropriate venue is at the time of filing the action. *Horihan v. Hartford, Inc. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997). At the time this action was commenced there were multiple Defendants which made the Southern District of Ohio an improper venue.

## IV. Conclusion.

Defendant Gregory White's May 31, 2005 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (5), and (6) (doc. 28) is **GRANTED**. As Gregory White was the last remaining Defendant in this case, this action is **DISMISSED**. The Clerk of Court is

**DIRECTED** to enter **JUDGMENT** in favor of Defendants. Accordingly, Plaintiff Caroline F. Keeble's August 11, 2005 motion for extension of time to complete discovery (doc. 35) is **MOOT**.

/s/ 8-23-2005
Edmund A. Sargus, Judge
United States District Court